**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**


NELSON SOLORZANO,               :

      Plaintiff,               :

                                   Case No. 3:08cv00345

  vs.               :

                                   District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,               :          Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,               :


      Defendant.               :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.      INTRODUCTION

      Plaintiff Nelson Solorzano filed an application for Supplemental Security Income (SSI) on December 19, 2003 asserting he was under a "disability" within the meaning of the Social Security Act due to back pain and depression. (Tr. 90-91). Plaintiff's SSI application proceeded through the initial stages of administrative review to a hearing before Administration Law Judge (ALJ) Melvin A. Padilla. (Tr. 20-36). After the hearing ALJ Padilla issued a written decision concluding that Plaintiff was not under a disability except for a closed period from July 26, 2004 through August 31, 2005. (Tr. 35-36).

      This Court has jurisdiction to review ALJ Padilla's non-disability decision. *See* 42 U.S.C. §405(g). The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record, and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a reversal of ALJ Padilla's non-disability determinations because he continues to be under a disability. He alternatively seeks a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming ALJ Padilla's decision that Plaintiff was not under a disability except during the closed period from July 26, 2004 through August 31, 2005.

## II.    BACKGROUND

### A.    Plaintiff's Age, Education, and Work History

On the date Plaintiff filed his SSI application he was fifty-eight years old, placing him in the category of a "person closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. §416.963; *see also* Tr. 34. He was sixty-two years old on the date of the ALJ's decision, placing him in the category of a "person closely approaching retirement age" for Social Security purposes. *See* 20 C.F.R. 416.93. Plaintiff was educated in Venezuela where he earned multiple advanced degrees. (Tr. 138, 497).

During the past fifteen years, Plaintiff worked primarily as a substitute teacher at the high school level and as a college instructor (part-time). (Tr. 134-38). He has also worked as an office manager, a community planner, a community outreach coordinator, and a grant writer. (Tr. 532). The vocational expert who testified during the ALJ's hearing believed that Plaintiff's jobs involved transferable skills including customer service skills, decision-making skills, planning skills, basic office skills, and specialized teaching skills. (Tr. 533).

Plaintiff testified during the ALJ's hearing that he had not been able to work since April 2006 due to physical and mental problems. (Tr. 498). He explained his physical problems as follows:

> I suffered a[n] airplane accident, and have a spinal injury that creates a lot of pain and all my lower body functions are disabled or diminished or I just don't function right from my waist down. And I have that back pain that is constant. And sometimes it's been very great.

(Tr. 499).  He further explained that he has two types of pain:  an intense pain in his lower back "similar to ... smashing your finger with a hammer...." and a more constant burning pain in his legs and ankles.  (Tr. 499-500).  He takes prescription pain medications when the pain is too much.  He noted, "But if I don't feel the pain, I don't take it."  (Tr. 507).

Plaintiff estimated that he could walk for ten minutes, or one to two blocks, before needing to sit.  When sitting, he needs to change positions frequently "so it won't hurt so much."  (Tr. 508).  He could stand in one place for about ten minutes.  He estimated that he cold lift fifteen pounds, but he was not asked how frequently he could lift this amount of weight.  (Tr. 509).

Plaintiff testified that he suffers from depression involving anguish, uncertainty, and crying.  He also has many problems getting along with others.  (Tr. 502).  He testified that his emotional problems have caused him to be unable to keep public-type jobs, like teaching.  *Id*.  He cries daily.  He leaves home only when needed, about three times per week.  He does not have family or friends.  He no longer has a girlfriend.  He was seeing a mental health counselor every two weeks, but he had not seen her during the two months before the ALJ's hearing.  (Tr. 504).  At the time of the ALJ's hearing, Plaintiff was no longer taking medication for depression or attending counseling because he believed it was not solving his problems.  (Tr. 502-03, 505).

### B.    Dr. Buban's Testimony

Dr. Buban testified during the ALJ's hearing about her review of the record.  (Tr. 521-32).  She indicated that Plaintiff "has had a pain condition for a number of years." (Tr. 521).  She testified, "From a psychological perspective, this is a complicated case and it's from the perspective that he does have a chronic mental health condition, a pain condition.  And there are a number of psychosocial factors and cultural factors, but I think they're all at times coming together, which increases stress and actually provide a significant number of obstacles to him for solving the difficulties that he has...."  (Tr. 522-23).

3

Dr. Buban opined that Plaintiff did not continually meet the criteria set forth in the Commissioner's Listing of Impairments. (Tr. 523). He was, however, significantly depressed in 2004 and 2005 to the point where his functioning, his activities of daily living, and his emotional stability "were all significantly compromised." *Id*. Dr. Buban acknowledged that Plaintiff possibly met a Listing during that period of time. (Tr. 528).

When asked about Plaintiff's limitations, Dr. Buban testified:

> We cannot limit any of his cognitive abilities.... I think dealing with the public in a[n] unpredictable manner. You know I think in terms of teaching or that kind of situation it does not sound from his testimony that he had difficulty maintaining his class, conducting his class. So, but dealing with the public in an unpredictable [sic] such as in a customer service situation, I think would present difficulties, because that is unpredictable and the likelihood of misunderstanding and escalating confusion could occur. So I would limit those kinds of public interactions, not ... a classroom or controlled structured situation. There really are not a lot of limitations from a psychological perspective.

(Tr. 523-24).

## III.    THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements. Chief among these is the "disability" requirement. To receive SSI an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).

The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 20-21; *see also* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## IV. ALJ PADILLA'S DECISION

At Step 2 the ALJ determined that Plaintiff suffered from the severe impairments of "thoracic and lumbar spine degenerative disc disease; chronic neuropathic process involving the lower extremities; depressive disorder; and personality disorder." (Tr. 24).

The ALJ determined at Step 3 that Plaintiff's depressive disorder met section 12.04 of the Commissioner's Listing of Impairments as of July 26, 2004 to September 1, 2005, when he began a new job. (Tr. 29). The ALJ specifically concluded that during this period, "the claimant's depressive disorder met section 12.04 with symptoms of psychomotor agitation or retardation, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide resulting in 'marked' restriction of

activities of daily living and in maintaining social functioning." (Tr. 29).

The ALJ also recognized at Step 3 that Plaintiff had obtained a new job and had returned to work in September 2005. (Tr. 29). His new job constituted substantial gainful activity between September 2005 and April 2006. (Tr. 28-29). The ALJ then determined in part:

> There is found to be evidence of medical improvement in his mental functioning as reflected in his ability to perform teaching duties. This is also based on the overall testimony of the Medical Expert indicating only a possibility of a closed period when this person's mental condition may have met or equaled the listing-level severity. She did not see any evidence of such continued dysfunction as of late 2005.

(Tr. 29). For these and other reasons, the ALJ concluded that Plaintiff's "condition no longer met or equaled Listings listing-level severity and disability ceased as of September 1, 2005." (Tr. 29).

At Step 4 the ALJ assessed Plaintiff's Residual Functional Capacity as follows:

> the claimant could lift up to twenty pounds occasionally and ten pounds frequently; he must have the option to alternate positions as needed; he must avoid climbing ladders, scaffolds or working at unprotected heights; pushing and pulling in the lower extremities is limited to occasionally; he is limited to low stress jobs as defined in the *Dictionary of Occupational Titles* (that is, no jobs involving hazardous or dangerous activities); and further restriction of not having to deal with people in an unpredictable manner but he can dealt with people generally (based on Medical Expert testimony that he would have limitation in dealing with the public in an unpredictable manner such as in customer service but this would not preclude teaching). Therefore, the residual functional capacity is for a reduced range of light work.

(Tr. 30). The ALJ further found at Step 4 that in light of Plaintiff's residual functional capacity, he could perform his past relevant work as a  school teacher.

The ALJ also continued to Step 5, finding that a significant number of jobs existed in the regional and national economies that Plaintiff could perform.

Based on his findings throughout the sequential evaluation, the ALJ ultimately

concluded that Plaintiff was not under a "disability" within the meaning of the Social Security Act except for the closed period from July 26, 2004 through August 31, 2005. (Tr. 35).

## V.    JUDICIAL REVIEW

Judicial review of an ALJ's decision focuses in part on whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth

Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## VI.    DISCUSSION

Plaintiff contends that he is far more limited in his ability to perform the mental demands of work – specifically in his ability to work with people – than the ALJ found. Plaintiff further contends that the ALJ relied on Dr. Buban's vocational conclusions, which were outside her area of expertise. Plaintiff points out that Dr. Buban did not think Plaintiff's ability to deal with the public would affect his ability to teach. He argues, "The effect of [his] limitation on dealing with the public in an unpredictable setting is a question for a vocational expert, not a physician." (Doc. #10 at 11). Plaintiff further contends that Dr. Buban's opinion was not ignored because the vocational expert was asked to consider a person limited in his ability to deal with people as Dr. Buban described. Plaintiff emphasizes, "He was not asked simply to consider a person who could not deal with the public in an unpredictable setting. It is unclear whether his answers would have been different." *Id.*

In his consideration of the evidence, the ALJ reasonably relied on Dr. Buban's opinion regarding Plaintiff's mental limitations and reasonably restricted him to not having to deal with people in an unpredictable manner, as in a customer service situation, but found he was able to deal with people generally, as in a teaching situation. *See* Tr. 30. Contrary to Plaintiff's contention, Dr. Buban's opinion on these matters was within her expertise and was not a vocational conclusion.

The Regulations provide, "Medical opinions are statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical and mental restrictions." 20 C.F.R. §416.927(a)(2). Contrary to Plaintiff's contentions, Dr. Buban testified within her medical expertise when she described her opinions about Plaintiff's limitations on her ability to deal with people and by providing examples. Dr. Buban stated that Plaintiff was limited in dealing with the public in an unpredictable manner, and gave customer service as an example of such a situation. (Tr. 523-24). Dr. Buban then elaborated that Plaintiff was not limited in dealing with people in a classroom, or controlled, structured situation. (Tr. 524). When further questioned by Plaintiff's attorney, Dr. Buban contrasted the role of a teacher to customer service and explained that a professor decides how to structure his or her class, and, in a teaching situation, the teacher actually sets up the environment and expectations. (Tr. 529). In doing so, Dr. Buban's testimony did not stray into the area of vocational expertise because she was not providing information about how many jobs were available to a person with Plaintiff's mental limitations or abilities in the regional or national economies, like a vocational expert would, and was instead merely describing Plaintiff's mental abilities with supporting examples.

Other record evidence also supports the ALJ's finding that Plaintiff could deal with people generally, such as in a classroom setting, before and after the closed period of disability. For example, in December 2003, the month Plaintiff filed his SSI application, Mr. Haney noted that Plaintiff had made adequate choices about keeping appointments. (Tr. 208). In May 2004 Plaintiff reported good relationships with his supervisors, co-workers, and the public. (Tr. 245). At that time, Plaintiff lived with his girlfriend and reported a good relationship with her. *Id*. Although he described himself as a loner, Plaintiff told Dr. Flexman that he got along well with others. (Tr. 245). He was compliant with Dr. Flexman's evaluation and displayed an optimal response style. (Tr.

246).  Plaintiff informed Dr. Flexman that he visited with friends (Tr. 246).  Notably, Dr. Flexman concluded that Plaintiff had only slight restriction for interacting appropriately with the public, co-workers, and supervisors.  (Tr. 248).

At the ALJ's October 2006 hearing, Plaintiff testified that he was able to go out to the supermarket if he needed to buy something.  (Tr. 503).  He went grocery shopping with his son, who assisted with the heavy work activity (Tr. 511).  He went out to eat to celebrate his son's birthday.  (Tr. 512).  And he went to church every Sunday.  (Tr. 512).  These activities also tend to support the ALJ's finding that he could deal with people generally before and after  the closed period of disability. While Plaintiff might have displayed one or two instances of inappropriate behavior, *see* Doc. #10 at 11-12, he has failed to show that these isolated instances must result in a finding of disability outside the closed period.  Indeed, he has not identified any physician or psychological opinion that he had such disabling mental limitations prior to July 26, 2004 or after August 31, 2005.  Significantly, he performed teaching duties during the period he claims disability.  He apparently held two part-time teaching positions in January 2004.  (Tr. 207, 245).  In September and October 2005, Plaintiff reported that he had started a new job.  (Tr. 436, 437).  Similarly, in March 2006, Plaintiff indicated that it was difficult to visit his physician due to, in part, job constraints.  (Tr. 491). And during the ALJ's October 2006 hearing, Plaintiff testified that he worked from September 2005 to April 2006 and had looked for work since that time.  (Tr. 497-98).  Plaintiff's work activity, albeit part-time, also tends to support the ALJ's assessment of his physical and mental work abilities and limitations before July 26, 2004 and after August 31, 2005.

Plaintiff also contends that the ALJ erred by failing to consider the combined impact of his physical and mental limitations would have on his ability to work around people.  Plaintiff explains that the record clearly shows he has an adjustment disorder, with disturbance of mood and conduct, and a personality disorder, with dependent and narcissistic personality traits.  Plaintiff further explains that the record clearly show he has

a painful back condition as shown by objective testing, pain management treatment he has undergone, and Dr. Danopulos' opinion. Plaintiff argues, "Dr. Buban agreed that how [Plaintiff] related in a situation that involved unpredictable infrequent stresses might well be affected by his pain tolerance. Tr. 530. She noted pain could reduce stress tolerance and increase irritability. Tr. 531. In other words, while [Plaintiff's] mental impairments standing alone might not interfere significantly with his ability to work around people, his mental impairments combined with his pain would...." (Doc. #10 at 13).

The ALJ's decision sufficiently indicates that he considered Plaintiff's pain condition and mental impairments in combination. The ALJ discussed the evidence regarding Plaintiff's thoracic and lumbar spine condition, his other physical complaints, his treatment with various physicians, his hospitalizations and emergency room visits, and his mental health evaluations and treatment. *See* Tr. 24-33. The ALJ considered the physician reports, the assessments of the state agency reviewing physicians and psychologists, and the medical expert's testimony. *See id*. The ALJ also explicitly acknowledged Plaintiff's testimony, including his pain testimony. *See* Tr. 22-23, 31, 34. Further, the ALJ explicitly found Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments, before July 26, 2004 or after August 31, 2005. (Tr. 28-29). The ALJ thus considered Plaintiff's impairments in combination, including his pain and mental limitations, and reasonably accommodated his resulting limitations in his assessment of Plaintiff's residual functional capacity. *See Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 591-92 (6th Cir. 1987) (ALJ considered claimant's impairments in combination where the ALJ referred to "a combination of impairments" in finding that the claimant did not meet the requirements of a listed impairment and when the ALJ referred to claimant's "impairments" in the plural); *see also Simons v. Barnhart*, 114 Fed.Appx. 727, 734 (6th Cir. 2004).

Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's final non-disability decision be affirmed; and

2.      The case be terminated on the docket of this Court.


January 15, 2010

_____s/ Sharon L. Ovington_____
Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).